**Anton Vialtsin** Cal. Bar No. 290333
*Attorney at Law*
185 West F Street, Suite 100-D
San Diego, California  92101
Telephone:    (619) 357-6677
Facsimile:    (619) 234-5322
Email:           antonvialtsin@gmail.com

*Attorney for Raul Partida, Sr.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

HON. GONZALO P. CURIEL

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>RAUL PARTIDA, SR. (32),<br><br>  Defendant. | **DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Case No.  3:21-cr-02546-GPC-32<br><br>Date: February 13, 2023<br><br>Time: 8:30 a.m. |

Fifty-six-year-old Raul Partida, Sr. will face deportation after many decades of law-abiding life in the United States and holding legal residency since childhood. *PSR* at ¶ 95.  He moved to the United States with his mother when he was five. *PSR* at ¶ 47.  When they first arrived, Raul's mother could secure only a studio apartment without any furniture through the housing authority.  *PSR* at ¶ 48.  As a result, Raul and his siblings slept on the floor with only blankets.  They were poor and lived in a low-income and gang-infested neighborhood in Los Angeles.  *PSR* at ¶

DEFENDANT'S SENTENCING MEMORANDUM

1

49. It took over a year for Raul's mother to settle down and finally enroll him in elementary school. He spoke no English, but Raul tried to adapt and engage with his teachers and classmates. He was always a good student and liked school. The family moved a lot as Raul's mother had difficulty supporting the family financially. When it was time to go to high school, Raul's mother could no longer afford their rent in Los Angeles. Raul stayed behind and lived with his friend's family to graduate high school while his mother relocated to El Centro. While the separation took a toll on the family, Raul's mother did not want to take Raul out of an already familiar high school. *PSR* at ¶ 49.

After Raul graduated, he enrolled in Imperial Valley College in El Centro but found it difficult to focus on school. Without reliable transportation to get to class, Raul ended the pursuit towards his degree and withdrew from college after two semesters. *PSR* at ¶ 50. Raul moved back to Los Angeles, lived with his friends, and heavily relied on financial help from his sister. *PSR* at ¶ 51. Raul worked odd jobs, including construction and delivering phone books, a relic of the past. *Id.* Raul eventually found his footing and spent the rest of his life in El Centro and Mexicali.

In 1995, Raul met the love of his life and married Maria De Los Angeles Dominguez Regalado. *PSR* at ¶ 52. Raul and his wife raised three wonderful children, who are all law-abiding and in their adult years. "[Raul] views his children as blessings in his life." *PSR* at ¶ 53. In 2017, Raul's wife and children received immigration status in the United States; however, Raul's oldest daughter, Lizbeth, was unable to gain legal residency. She resides in Mexicali. Raul middle child, Raul Jr., is a high school graduate and works at a Dollar Tree to help his mother pay rent. Raul's youngest child, Jesus, is on track to graduate high school this year. *Id.* In speaking with the probation officer, Raul's wife said, "they have had a stable marriage for over 20 years. She stated [Raul] is dedicated to their family and enjoys spending time with their children. Their family is looking

DEFENDANT'S SENTENCING MEMORANDUM

forward to this case been resolved." Without a doubt, Raul's case impacted him and his family. In his letter to the Court, Raul Jr. wrote,

> As a family we are going through a difficult stage due to the lack of presence of my father, I know that you can always get ahead in life, but it hasn't been easy. I am now the one who has to carry the weight of my family and now I understand many things that my father told me, and I have learned many things in this year, I know that this changed me a lot and I know that it also changed my father, now he is not going to trust anyone, I know that he sought refuge in God and so have I, our family just wants this situation to end and that life can make us smile again and be reunited as a family.[1]

Raul's family supported him in this difficult situation as he has provided love and financial support to them for decades. However, Raul also does not avoid responsibility for his actions. In his letter to the Court, Raul described his guilt and shame since he first spoke to the arresting officers.

Prior to his arrest, Raul worked as a general handyman at Regency Park Apartments in El Centro for over a decade. *PSR* at ¶ 70. He started by painting the apartment buildings, and the owner eventually offered him a permanent position as a maintenance worker. *Id.* He lived an honest life. Even though Raul has lived his whole life without any interactions with law enforcement, the Guidelines do not consider the length of his law-abiding life. Although Criminal History Category I identifies individuals with relatively crime-free lives, it does not differentiate individuals by age nor how long they have refrained from criminal conduct. As one court recognized:

> [F]or example, the Guidelines do not distinguish between a nineteen-year-old and a sixty-year-old, both of whom have led crime-free lives and consequently are assigned the same low Criminal History Category. In other words, the nineteen-year-old and the sixty-year-old receive the same credit under the Sentencing Guidelines for their

---

[1] Character letters were filed as a separate sentencing document.

DEFENDANT'S SENTENCING MEMORANDUM

3

criminal history, because the longevity of the sixty-year-old's criminal history is not taken into account.

*United States v. Ward*, 814 F. Supp. 23, 24 (E.D.Va. 1993).

The Guidelines recognize that age may be relevant in determining whether a departure is warranted and "may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as a home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. 5H1.1. The Guidelines further allow for age to be considered alone or in combination with other offender characteristics to distinguish cases covered by the Guidelines. *Id*. It is virtually certain that Raul poses very little threat to society. Indeed, Raul is among the individuals least likely to recidivate due to his age. Additionally, Raul poses no threat to the local community because he will, unfortunately, be deported to Mexico. Placing Raul in prison would be counterproductive for him, his family, and our society.

Aside from the over fifteen months he has already spent behind bars, the collateral consequences create a harsh punishment for Raul. After over five decades in the US, Raul will be an outsider in Mexico. He will first have to find where to live and where to work. He will then have to create a new life in Mexico. These are all decisions and hurdles Raul never imagined he would need to overcome at fifty-six years old. While Raul has many choices to make ahead of him, he did not have control over virtually any aspect of the crime he committed.

On the day of his arrest, Raul voluntarily spoke with the arresting agents at his place of work without ever receiving a Miranda warning. *PSR* at ¶ 15. The agents later interviewed Raul for he second time. On both occasions, he told the agents that he did not seek out an easy opportunity to make money; he was recruited by someone he trusted instead. Raul's employer and supervisor of the Regency Apartments offered Raul money for opening a bank account. This individual lied to Raul by saying that the account would be used to transfer real estate proceeds. Raul never personally transferred any currency through the shell

DEFENDANT'S SENTENCING MEMORANDUM

4

account. When it was time to report his taxes for the year, Raul sought help from the same tax preparer that he had used for many years. The tax preparer, however, expressed concern that Raul reported moving large sums of money through one of his bank accounts and refused to complete the tax returns. "[Raul] stated he then realized he was in serious trouble and anticipated he would be arrested." *PSR* at ¶ 18.

The Guidelines enumerate five factors and require a fact-based determination guided by the totality of circumstances to determine whether a minor role reduction applies. Courts must consider the degree to which the defendant: (1) understood the scope and structure of the criminal activity; (2) participated in the planning and organizing; (3) exercised decision-making authority; (4) participated the criminal acts and had discretion in performing those acts; and (5) was to benefit from criminal activity. See U.S.S.G. § 3B1.2. The parties jointly recommend the minor role reduction.

As the probation officer correctly noted, "[t]here [was] no information to suggest that [Raul] supervised any of the criminal participants nor [was] there evidence indicating he had any decision-making authority in the overall daily operations. The actual profit [Raul] received [have] not been confirmed, but the case agent noted account holders received a 1% payment for the amount of funds they laundered." *PSR* at ¶ 30. To be clear, the extent of Raul's participation in the overall conspiracy began and concluded with opening a bank account. Raul does not even know who made transfers or managed the daily activities on the account. *PSR* at ¶ 98. He never met any other participant in the conspiracy and knew only his recruiter. He received roughly $400 weekly to turn a blind eye to the transactions that passed through the shell account. *PSR* at ¶ 16.

As a hard-working man with no criminal history, Raul "expressed his remorse for his choice and called it the biggest mistake of his life. *PSR* at ¶ 98. As a result of his actions, he is now facing the loss of his legal permanent resident

status after five decades in the United States. *PSR* at ¶ 99. Raul asks this Court to sentence him to a reasonably proportional sentence relative to other participants. On December 19, 2022, this Court sentenced co-defendant Axel Guadalupe Garcia to a term of 12 months and 1 day. *Dkt. No.* 662. Mr. Guadalupe Garcia was responsible for $1.5 million in laundered proceeds. *See* Sentencing Memorandum of the United States, *Dkt. No.* 644. Despite having no control or knowledge over the amount of proceeds that passed through Raul's account, Raul is nonetheless responsible for a similar amount as Mr. Guadalupe Garcia. Raul Partida asks this Court for a time-served sentence (461 days) which would account for his age, decades of law-abiding life, and recognize that deportation "represents a significant consequence in and of itself." *PSR* at ¶ 95.

DATED February 6, 2022.

                            */s/ Anton Vialtsin*
                            Anton Vialtsin
                            Attorney for *Raul Partida*